FRANK BARBARO
ID# 48264-053
FMC DEVENS, BOX 879
AYER, MA  01432
PRO-SE PLAINTIFF

           US DISTRICT COURT
         DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANK BARBARO, <br> PRO-SE PLAINTIFF <br><br> vs <br><br> UNITED STATES OF AMERICA ON BEHALF OF THE FEDERAL BUREAU OF PRISONS (FMC DEVENS) <br> AND <br> INDIVIDUALLY NAMED PRISON OFFICIALS; DR BHATTI, MLP KILDUFF AND UNIT MGR MRS FERNANDEZ, <br> DEFENDANTS | DOCKET NO.: <br><br> JUDGE: <br><br> **05-40097MLW** <br><br> <u>MOTION</u> |

MOTION BY PRO-SE PLAINTIFF FOR DISCOVERY, BY INTERROGATORIES & DOCUMENTS, ON THE PLAINTIFF'S DOCTORS WHO ARE EMPLOYED BY THE DEFENDANT AS MEDICAL SPECIALISTS, BASED ON THE DEFENDANT REQUIRING THE PLAINTIFF TO HAVE A COURT ORDER SO THAT THE PLAINTIFF'S DOCTORS CAN PROVIDE MEDICAL EVIDENCE DEMONSTRATING THE NEED FOR THE PLAINTIFF'S SURGERY THAT WAS WITHHELD & PREVENTED BY THE DEFENDANT

CONSOLIDATED DECLARATION & ARGUMENT FOR A COURT ORDER ALLOWING DISCOVERY, BY INTERROGATORIES & DOCUMENTS, ON THE PLAINTIFF'S DOCTORS WHO ARE EMPLOYED BY THE FEDERAL BUREAU OF PRISONS AS MEDICAL SPECIALISTS WHEREIN, THE DEFENDANT REQUIRES THE COURT TO ORDER THE PLAINTIFF'S DOCTORS TO PROVIDE THE MEDICAL EVIDENCE, IN THE INSTANT ACTION, ALLEGING NEGLIGENCE BY THE DEFENDANT, IN WITHHOLDING & FAILING TO PROVIDE THE NECESSARY SURGERY, THAT THE DOCTORS ORDERED

DECLARATION & AFFIRMATION

Frank Barbaro, Pro-Se Plaintiff, hereinafter **Plaintiff**, declares and affirms, under penalty of Perjury, that the Instant Motion is true.

THE PLAINTIFF IS DENIED COURT ACCESS TO PROVE HIS ACTUAL INJURY, WITHOUT THE REQUESTED COURT ORDERED DISCOVERY, BY INTERROGATORIES & DOCUMENTS, ON THE PLAINTIFF'S DOCTORS WHO WILL PROVE THE DEFENDANT'S NEGLIGENCE, BY FAILING TO FOLLOW THE PLAINTIFF'S DOCTORS' ORDERS FOR SURGERY ON THE PLAINTIFF

1. The Plaintiff is respectfully requesting the Court to Order Discovery, by Interrogatories & Documents, on his Doctors; Dr Blumenkopf, Dr Pearson, Dr M Cohen, Dr Sundarin, Dr Genovese, Dr Williams and Dr Sommers in order to prove the Plaintiff's actual injury, by Neglaigence, that was Wrongfully acted out in the Defendant's Misconduct. The attached Complaint shows repeated allegations and evidence, demonstrating that the Plaintiff required surgery, that was confirmed by the above Plaintiff's Doctors.

(1)

Contrary to the Orders of the above Plaintiff's Doctors for surgery, on the Plaintiff, the Defendant withheld, prevented and failed to provide the surgery ordered by the Plaintiff's Doctors. The Defendant, by the Federal Bureau of Prisons, employs the Plaintiff's Doctors, wherein the Defendant requires the Plaintiff to make the Instant Application to the Court, in order to allow the Plaintiff's Doctors to provide the required medical testimony, demonstrating the Plaintiff's Actual Injury.

2. The Plaintiff is Denied Court Access in order to prove his Actual Injury, under authority of the US Supreme Court in <u>Lewis v Casey 518 US 343 (1996)</u> and <u>Bounds v Smith 430 US 817 (1977)</u>. The Plaintiff is respectfully requesting Liberal Interpretation, under the Instant Pro-Se Motion, pursuant to <u>Haines v Kerner 404 US 519 (1972)</u>. In Lewis v Casey and Bounds v Smith, the Supreme Court Ordered that the Plaintiff was required to demonstrate Actual Injury in the Instant Tort Action, under the same authority the Supreme Court ruled that the Defendant should not deny the Plaintiff meaningful Court Access.

3. The Plaintiff requires the above Discovery, by Interrogatories and Documents, on his Doctors who are employed as Medical Specialists by the Defendant. However, the Plaintiff is obstructed and impeded from having his Doctors answer any medical questions regarding the allegations in the Instant Complaint. The Plaintiff's Doctors will confirm, in their Interrogatories, that they ordered surgery for the Plaintiff, that was withheld and deprived to the Plaintiff.

(3)

4. The Plaintiff's Neuro Surgeon, Dr Blumenkopf, issued the attached Consultation report on or about 3/31/04, see Exhibit #1 Dr Blumenkopf Clinic Note dated 3/30/04, attached hereto. The above Clinic Note set forth that Dr Blumenkopf reviewed the Plaintiff's MRI Studies that were over 1 year old and obtained while the Plaintiff was in Custody at FCI Otisville Prison, hereinafter FCI OTV. Dr Blumenkopf further set forth that the Plaintiff needed Decompression Surgery, that was shown by the FCI OTV MRI Studies taken on 3/19/03 in Exhibit #2, attached hereto.

5. The Court Ordered Discovery, by Interrogatories and Documents, on the Plaintiff's Doctor, Dr Blumenkopf, we will see the evidence of the Plaintiff's Actual Injury, by the Defendant's withholding, depriving and failing to provide the Plaintiff of the medically required surgery. The Dr Blumenkopf medical evaluation was conducted with MRI Studies that were performed at the time of the Plaintiff's Detention at the Defendant's FCI OTV Prison. The Complaint allegations set forth the Defendant, by FCI OTV Prison, deprived and prevented the Plaintiff with the Community Standard of Medical Care, that required surgery based on the MRI Studies, that were evaluated by Dr Blumenkopf.

### THE PLAINTIFF'S DR BLUMENKOPF CONSULTATION REPORT CONFIRMS THAT THE MRI STUDIES HE EXAMINED WERE TAKEN OVER 1 YEAR EARLIER BY THE DEFENDANT'S FCI OTV PRISON

6. The Defendant's Medical Specialist, Dr Blumenkopf, on 3/30/04 examined the over 1 year old MRI Studies, that were taken by FCI OTV Prison, who acted on behalf of the Defendant in the Instant Action. Based on the over 1 year old MRI Studies, Dr Blumenkopf set forth that the Plaintiff required surgery to cure his Actual Injuries. Contrary to the Orders and Interpretation, by Dr Blumenkopf, the Defendant never acted from 1/98 thru 12/03 to evaluate the Plaintiff for surgery.

### THE PLAINTIFF'S ORTHOPEDIC SURGEON, DR PEARSON, TOLD THE PLAINTIFF THAT HE REQUIRED SHOULDER SURGERY & FURTHER MEDICAL EVALUATION BY A NEURO SURGEON

7. On 8/19/03 the Plaintiff was examined by an Orthopedic Surgeon, Dr Pearson, who is employed as a Medical Specialist by the Defendant's FCI OTV Prison. The Plaintiff is requesting Discovery, by Interrogatories and Documents, on Dr Pearson that will prove Actual Injury, by the Defendant's failure to follow Dr Pearson's Medical Orders. See Exhibit #3, Dr Pearson's Consult Report that is attached hereto.

## CONCLUSION

Based on all of the papers filed in the Instant Action, the Plaintiff is respectfully requesting the Court to Order Discovery, by Interrogatories and Documents, on the Plaintiff's Doctors in order to allow the Plaintiff Court Access, that is denied by the Defendants' withholding the Plaintiff's Doctor's medical evidence.

Respectfully Submitted,

Dated: 6/14/05   by: _____
Frank Barbaro (Pro-Se Plaintiff)

(5)

# 48264-053

*ESA Unauthorized Copy*

Patient: BARBARO, FRANK   Acct.#: 00013082816   MR #: 001056968

D.O.B: 03/28/1959   Date of Visit: 03/30/2004   Location:   AA-MO

Dictated:   03/30/2004   Transcribed:   03/31/2004 1:36 P

**Exhibit #1**

## CLINIC NOTE

This 45-year-old gentleman is seen at the request of Dr. Sandra Howard, clinical director at the Federal Medical Center at Devens, for neck and back complaints. Patient relates onset to a motor vehicle accident involved in 1996. At that time he apparently had a right shoulder dislocation. Since that time and particularly over the past year he has had increasing complaints of left-sided arm pain with weakness and also some atrophy. He has had persistent atrophy of the right side of the shoulder. He also has developed some back and left-sided radicular pain. He also complains of numbness involving his genitalia when walking or running. However, he denies any bladder or bowel dysfunction otherwise. He has been evaluated previously while incarcerated and apparently surgical management was suggested or recommended and he was transferred to the local facility for that consideration. He now presents for neurosurgical evaluation.

His past medical history and review of systems is comprehensively covered in the records that are provided with him and I have reviewed and confirmed that with him.

On pertinent findings he is a middle-aged well-appearing gentleman in no acute distress. He is alert, fluent, oriented and his affect is appropriate though at times somewhat defensive. His skin is unremarkable for clinical stigmata. His sclerae are anicteric. His chest is clear. His heart sounds are regular. His abdomen is benign. His motor strength shows some definite atrophy of the right pectoral girdle, supraspinatus, infraspinatus, and pectoral muscles. His strength on the left shows weakness of the deltoid, biceps, and triceps 4/5, distally 3/5. Grip is 3/5. On the right other than the obvious atrophy there is no obvious motor loss. Sensory exam is symmetrically subjectively intact. Lower extremity hip flexion on the right is limited to 4/5, otherwise full. Left lower extremity hip flexion, quadriceps proximally 4/5, otherwise full. Sensation is subjectively intact. Reflexes are symmetrically mute to 1+. Plantar responses are flexor. Gait exam is normal. Straight leg raising signs are negative.

He has cervical and lumbar studies dated March 19, 2003. The MR of the cervical region shows multilevel degenerative disease most apparent at the C4 level with cord compression on the right, also at the C5 and C3 levels. The lumbar study appears unremarkable. Both are open magnet studies of poor quality.

I discussed the situation thoroughly with the patient and reviewed the diagnostic imaging studies with him. I advised him of the impression of a cervical myeloradiculopathy type syndrome to account for both his pain and paresis. I advised him I thought the lumbar study was probably unremarkable. To proceed more definitively he agreed to update both cervical and lumbar MR scans on a high field magnet machine. Upon receipt and review of those we will come to a more definitive disposition but I advised it appeared that the cervical area warranted decompression.

Unreviewed

---

SBennett Blumenkopf, MDBennett Blumenkopf, MDBennett Blumenkopf, MD

Dictated by: Bennett Blumenkopf, MD
000849699/944028

cc:   Sandra Howard, MD
      FMC Devens
      42 Patton Road
      Ayer MA 01432

F. Bhatti, MD
Medical Officer
FMC Devens



SENSITIVE - LIMITED OFFICIAL USE
COPY RELEASED TO INMATE ON 5/8/03

EXHIBIT #2

March 24, 2003

A. Rumsey Abadir, MD
Interventional Radiology

Jacob J. Barie, MD
Interventional Radiology

Clifford D. Barker, MD
MRI/Body Imaging

Julie L. Barudin, MD
Women's Imaging

Susan M. Beatty, MD, PhD
Women's Imaging

Stephanie B. Cohen, MD
General Radiology

Lisa A. Fisher, MD
Body Imaging

Bob Greenwald, MD
General Radiology

Joseph L. Racanelli, MD
Neuroradiology

Samuel I. Wahl, MD
Interventional Radiology

Joseph F. Yacovone, MD
Chairman
Nuclear Medicine/Women's Imaging

Joseph R. Zuback, DO
Neuroradiology

Otisville Federal Correctional Institution
P.O. Box 600
Otisville, New York 10963

RE:  BARBARO, FRANK          EXAM: MRI CERVICAL SPINE AND
                                   LUMBAR SPINE
     #48264-053               DATE: 11/30/02 (request), DONE 3-19-0
     DOB: 3/28/59             REQUESTED BY: Dr. Williams

MRI OF THE CERVICAL SPINE
There is marked degenerative change within the cervical spine with desiccation and narrowing of the discs from C2 through C6. There is posterior wedging of the disc at the C6-7 level. There is a central and right herniation at the C4-5 and C5-6 levels with minimal impingement on the cord, but narrowing of the neural foramina. The remainder of the examination is unremarkable.

IMPRESSION:   1.  Central and right herniation at the C4-5 and C5-6 levels, primarily narrowing the neural foramina with minimal impression upon the thecal sac.
              2.  Degenerative disc disease throughout the cervical spine.
              3.  No evidence of spondylolisthesis.

MRI OF THE LUMBAR SPINE
Minimal degenerative changes are noted within the intervertebral discs in the lumbar spine. There is mild desiccation and minimal height loss at the L2-3, L4-5 and L5-S1 levels. Mild bulging of the discs is also noted at these levels, however, there is no evidence of a frank herniation. Note is made of mild spinal stenosis from L3 through L5. No other abnormalities are observed.

IMPRESSION:   1.  Disc bulges at L2-3, L4-5 and L5-S1.
              2.  No HNP.
              3.  Mild spinal stenosis.

4-1-03
Dr. P Williams

Sincerely,

John Markisz, M.D.
Radiologic Associates, P.C.

JM:sb    Radiologic Associates, P.C. 60 Prospect Avenue, Middletown, New York 10940

EXHIBIT #3

# Harold W. Pearson, M.D.
## ORTHOPEDIC SURGERY & FRACTURES
## SPORTS MEDICINE & HAND CARE

410 Gidney Avenue
Newburgh, NY 12550
PHONE: (845) 565-8629
FAX: (845) 565-4552

419 East Main Street, Suite 303
Middletown, NY 10940
PHONE: (845) 343-2123 / 3278
FAX: (845) 565-4552

August 19, 2003

Otisville Federal Facility

Re: Barbaro, Frank

Dear Sir:

Mr. Barbaro is a 44-year-old gentleman who was seen in my office lately on 08/19/2003 with a long protracted history of being involved in a car accident in 1996 and then being incarcerated. He states he had nerve conduction studies of his upper and lower extremities and he was diagnosed with a "herniated disc" in 1996 or 1997 but has not been able to get surgery since that time. He does not remember the name of the hospital nor the doctor in which he was treated. He also is complaining of a right shoulder that he states dislocates. It is starting to dislocate more and more depending on his activity.

I have no reports of his nerve conduction studies, although I do have an MRI of his neck, which shows multiple compressions with spinal stenosis of the cervical spine. The MRI of the shoulder shows tendinopathy and impingement and a Hill-Sachs lesion.

Physical Examination: Not done because I want to have all of these studies before I do any examination. He complains also of pain at night when he tries to sleep on his shoulder, and weakness in his left arm with atrophy and weakness of the triceps. Looking at his MRI, this could be appreciated.

Plan:
1. We are going to get a closed MRI of his neck.
2. X-rays of the patient's right shoulder.
3. Upper extremity nerve conduction studies.
4. We are going to have to have this patient seen by a neurosurgeon because I believe his cervical MRI to be significant. I will see the patient back in two weeks. Hopefully, we will have our studies by then.

J. O'AVIRRO, M.D.
9-9-03